Citation Nr: 1602947 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 09-01 775 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUES

1. Entitlement to service connection for fibromyalgia. 

2. Entitlement to service connection for an acquired psychiatric disability other than posttraumatic stress disorder (PTSD), to include anxiety.

3. Entitlement to service connection for a gastrointestinal disability, to include gastroesophageal reflux disease (GERD). 

4. Entitlement to service connection for erectile dysfunction.

5. Entitlement to a compensable disability rating for bilateral hearing loss.


REPRESENTATION

Appellant represented by: John Berry, Attorney


ATTORNEY FOR THE BOARD

Michael T. Osborne, Counsel


INTRODUCTION

The Veteran had active service from September 1974 to September 1978.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2007 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Albuquerque, New Mexico, which denied, in pertinent part, the Veteran's claim for a compensable disability rating for hearing loss in the left ear (which was characterized as high frequency hearing loss in the left ear) and a claim of service connection for an acquired psychiatric disability other than PTSD, to include anxiety (which was characterized as chronic depressive adjustment disorder with mixed anxious and depressed mood (claimed as acute psychotic state)). The Veteran disagreed with this decision in March 2008. He perfected a timely appeal in January 2009.

This matter also is on appeal from a March 2009 rating decision in which the RO denied, in pertinent part, the Veteran's claims of service connection for fibromyalgia, a gastrointestinal disability, to include GERD (which was characterized as a gastrointestinal condition to include GERD (also claimed as acid reflux), hiatal hernia, and irritable bowel syndrome)), and erectile dysfunction. The Veteran disagreed with this decision in April 2009. He perfected a timely appeal in November 2009.

In May 2010, the Board remanded this matter to the Agency of Original Jurisdiction (AOJ) for additional development. The Board directed that the AOJ attempt to obtain updated VA outpatient treatment records for the Veteran. The AOJ's efforts to attempt to obtain these records are documented in the Veteran's VBMS eFolder. The Board also directed that the AOJ schedule the Veteran for VA examinations to determine the nature and etiology of fibromyalgia and acquired psychiatric disability other than PTSD. These examinations occurred in January 2011.

In a June 2011 rating decision, the RO granted service connection for right ear hearing loss and assigned a single zero percent rating for service-connected bilateral hearing loss. The RO noted in this decision that it was evaluating the Veteran's hearing loss in both ears as a single service-connected disability. Because an increased rating claim for left ear hearing loss already was on appeal at the time of the June 2011 rating decision, and because the Veteran did not disagree with the grant of service connection for right ear hearing loss in the June 2011 rating decision within 1 year of this decision, the Board has recharacterized this issue as entitlement to a compensable disability rating for bilateral hearing loss. See also 38 C.F.R. § 20.302 (2015).

There was additional evidence added to the record after the issuance of the June 2011 supplemental statement of the case prior to the transfer of the case to the Board. The Board finds that this additional evidence was not relevant such that the issuance of a supplemental statement of the case was required as set forth in 38 C.F.R. § 19.37(a).

This appeal was processed using the Virtual VA (VVA) and Virtual Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these electronic records.

The issues of entitlement to service connection for a gastrointestinal disability, entitlement to service connection for erectile dysfunction, and entitlement to a compensable disability rating for bilateral hearing loss are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ. VA will notify the Veteran if further action is required.




FINDINGS OF FACT

1. Resolving reasonable doubt in favor of the Veteran, during the course of this appeal, an acquired psychiatric disability other than PTSD, to include adjustment disorder with mixed anxious and depressed mood, is shown to be etiologically related to the Veteran's military service. 

2. The most probative evidence of record shows that the Veteran does not have fibromyalgia.


CONCLUSIONS OF LAW

1. An acquired psychiatric disability other than PTSD, to include adjustment disorder with mixed anxious and depressed mood, was incurred in active service. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2015).

2. Fibromyalgia was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2015). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Before assessing the merits of the appeal, VA's duties under the Veterans Claims Assistance Act (VCAA) must be examined. The VCAA provides that VA shall apprise a claimant of the evidence necessary to substantiate his or her claim for benefits and that VA shall make reasonable efforts to assist a claimant in obtaining evidence unless no reasonable possibility exists that such assistance will aid in substantiating the claim.

In letters issued in March and August 2006 and in March 2008, VA notified the Veteran of the information and evidence needed to substantiate and complete his claims, including what part of that evidence he was to provide and what part VA would attempt to obtain for him. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). These letters informed the Veteran to submit medical evidence relating the claimed disabilities to active service and noted other types of evidence the Veteran could submit in support of his claims. The Veteran also was informed of when and where to send the evidence. After consideration of the contents of these letters, the Board finds that VA has satisfied substantially the requirement that the Veteran be advised to submit any additional information in support of his claims. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). Additional notice of the five elements of a service-connection claim was provided all of the VCAA notice issued to the Veteran in this appeal, as is required by Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

As will be explained below in greater detail, the evidence supports granting service connection for an acquired psychiatric disability. Thus, no further discussion in regard to this issue as it relates to whether the duties under the VCAA have been fulfilled is warranted as the benefit sought on appeal is granted. In regard to the issue of entitlement to service connection for fibromyalgia, the Veteran was fully informed of the evidence needed to substantiate the claim. The Veteran also has had the opportunity to submit additional argument and evidence and to participate meaningfully in the adjudication process. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

With respect to the timing of the notice, the Board points out that the Court has held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a Veteran before the initial unfavorable agency of original jurisdiction decision on a claim for VA benefits. See Pelegrini, 18 Vet. App. at 112. Here, all relevant notice was issued prior to the currently appealed rating decision; thus, this notice was timely. Because the Veteran's claim is being denied in this decision, any question as to the appropriate disability rating or effective date is moot. See Dingess, 19 Vet. App. at 473. And any defect in the timing or content of the notice provided to the Veteran and his attorney has not affected the fairness of the adjudication. See Mayfield, 444 F.3d at 1328.

The Board also finds that VA has complied with the VCAA's duty to assist by aiding the Veteran in obtaining evidence and affording him the opportunity to give testimony before the AOJ and the Board, although he declined to do so. It appears that all known and available records relevant to the issues on appeal have been obtained and associated with the Veteran's claims file; the Veteran has not contended otherwise. The Veteran's electronic paperless claims files in Virtual VA and in Veterans Benefits Management System (VBMS) have been reviewed. The Veteran also does not contend, and the evidence does not show, that he is in receipt of Social Security Administration (SSA) disability benefits such that a remand to obtain his SSA records is required.

The Veteran has been provided with a VA examination which addressed the contended causal relationship between the claimed disabilities and active service. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79 (2006). Given that the pertinent medical history was noted by the examiner, this examination report sets forth detailed examination findings in a manner which allows for informed appellate review under applicable VA laws and regulations. Thus, the Board finds the examination of record is adequate for rating purposes and additional examination is not necessary regarding the claim adjudicated in this decision. See also 38 C.F.R. §§ 3.326, 3.327, 4.2. In summary, VA has done everything reasonably possible to notify and to assist the Veteran and no further action is necessary to meet the requirements of the VCAA.

Service Connection for Fibromyalgia and an Acquired Psychiatric Disability

The Veteran contends that he incurred fibromyalgia and an acquired psychiatric disability other than PTSD (which he characterized as anxiety) during active service. He alternatively contends that he has experienced continuous disability due to these claimed disabilities since his service separation.

Laws and Regulations

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection also may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Establishing service connection generally requires (1) medical evidence of a presently existing disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)); Hickson v. West, 12 Vet. App. 247, 253 (1999).

If there is no evidence of a chronic condition during service or an applicable presumptive period, then a showing of continuity of symptomatology after service may serve as an alternative method of establishing the second and/or third element of a service connection claim. See 38 C.F.R. § 3.303(b); Savage v. Gober, 10 Vet. App. 488 (1997). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Evidence of a chronic condition must be medical, unless it relates to a condition to which lay observation is competent. If service connection is established by continuity of symptomatology, there must be evidence that relates a current condition to that symptomatology. See Savage, 10 Vet. App. at 495-498.

In Walker, the Federal Circuit overruled Savage and limited the applicability of the theory of continuity of symptomatology in service connection claims to those disabilities explicitly recognized as "chronic" in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); see also Fountain v. McDonald, 27 Vet. App. 258 (2015) (adding tinnitus as an "organic disease of the nervous system" to the list of disabilities explicitly recognized as "chronic" in 38 C.F.R. § 3.309(a)). Because an acquired psychiatric disability other than psychoses and fibromyalgia are not recognized explicitly as "chronic" in 38 C.F.R. § 3.309(a), the Board finds that Savage and the theory of continuity of symptomatology in service connection claims is inapplicable to these claims.

It is VA policy to administer the laws and regulations governing disability claims under a broad interpretation and consistent with the facts shown in every case. When a reasonable doubt arises regarding service origin, the degree of disability, or any other point, after careful consideration of all procurable and assembled data, such doubt will be resolved in favor of the claimant. Reasonable doubt is one which exists because of an approximate balance of positive and negative evidence which does not prove or disprove the claim satisfactorily. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. See 38 C.F.R. § 3.102.

Factual Background and Analysis

Service treatment records show that the Veteran denied all relevant pre-service medical history at his enlistment physical examination in August 1974, 1 month prior to his entry on active service in September 1974. No marks were made on the clinical evaluation portion of the Veteran's enlistment physical examination report by the in-service examiner who conducted this examination. This examiner also found the Veteran to be qualified for entry on to active service. On periodic physical examination in October 1974, 1 month after his entry on to active service, clinical evaluation of the Veteran was normal. He was found qualified for U.S. Navy nuclear submarine duty. At his separation physical examination in September 1978, clinical evaluation of the Veteran was normal. The Board notes that the absence of contemporaneous records does not preclude granting service connection for a claimed disability. See Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (finding lack of contemporaneous medical records does not serve as an "absolute bar" to the service connection claim); Barr v. Nicholson, 21 Vet. App. 303 (2007) ("Board may not reject as not credible any uncorroborated statements merely because the contemporaneous medical evidence is silent as to complaints or treatment for the relevant condition or symptoms").

Post-service evidence shows that the Veteran was hospitalized at a private facility in May 1982 after complaining of depression. A history of depression was noted. "He recently had a number of jobs that he has been unable to keep and he leads a rather isolated, almost schizoid type of existence, where he does little or no socializing." The final diagnosis was schizophrenia, paranoid type.

The Veteran was hospitalized at a VA Medical Center for several days in September 1982 after "complaining that he was thinking of killing himself. He said that his father had taken a hand-gun away from him about 45 minutes or an hour prior to coming to the hospital." The Veteran reported a prior history of several psychiatric hospitalizations. "At team staffing and assessment it was felt that the [Veteran's] chief complaints were that of a negative attitude towards life and a feeling of boredom and uselessness." The Veteran reported being under a great deal of stress on active service aboard a U.S. Navy submarine with the capability of firing Trident missiles. The Axis I diagnoses included adjustment disorder with anxious and depressed mood and possible delayed post-traumatic stress syndrome.

In a February 1983 letter, R.E.H., M.D., stated that he had treated the Veteran in April 1979 "when he was in an acute psychotic state with perplexity, intentions to shoot himself, tearfulness, sleep disturbance with afternoon naps and then long sleep latency at night, and many existential-type questions about the meaning of life, etc. Apparently this had only been going on a relatively few days, but he believed his illness reflected stressful experiences as a radioman on a submarine while serving in the United States Navy." A history of "low moods and depression" since childhood was reported. Dr. R.E.H. stated that the Veteran had been hospitalized for 2 days at a private facility in April 1979 and had been treated as an outpatient with "strong psychoactive medication" and therapy until May 1980 when his medication was withdrawn and his therapy sessions ended. Dr. R.E.H. indicated that he was not aware of any followup psychotic episode in the Veteran.

The Veteran was hospitalized at a private facility in August 1997 after a suicide attempt via drug overdose. The morning after his admission, there were no signs of a drug overdose and the Veteran had returned to a normal state of consciousness. A psychiatric consult concluded that the Veteran was not suicidal. The discharge diagnoses were suicide attempt and depression. The Veteran was discharged in to the care of his wife with a recommendation for outpatient therapy.

The Veteran's post-service VA outpatient treatment records document multiple visits for a variety of acquired psychiatric disabilities other than PTSD, to include anxiety, in the early 2000's.

On VA mental disorders examination in April 2007, the Veteran's complaints included depression. The VA examiner reviewed the Veteran's claims file, including his service treatment records and post-service VA treatment records. He reported that he was not working and was caring for his wife full-time because she was wheelchair bound and suffering from multiple sclerosis. A history of psychiatric hospitalizations was noted. The Veteran stated that "his depression is fairly 'almost manageable, right now.'" Mental status examination of the Veteran showed linear thoughts, no delusions or hallucinations, no inappropriate behavior, no suicidal or homicidal ideation, a "good ability" to maintain his activities of daily living, full orientation, intact memory, no obsessive or ritualistic behavior, clear, relevant, logical speech with normal rate and rhythm, and reported problems with impulse control and irritability. The VA examiner stated that the Veteran "describes current mild symptoms of depression." This examiner also stated that the Veteran had moderate problems with socialization. The diagnosis was chronic adjustment disorder with mixed anxious and depressed mood.

In a June 2007 addendum, the April 2007 VA examiner stated, "[i]t would be presumptive on [his] part to definitely state if he was psychotic or not 28 years ago" when the Veteran was hospitalized in 1979. This examiner also stated that, although Dr. R.E.H. described the Veteran to be in an "acute psychotic state" in April 1979, "[t]he rest of the symptomatology in [his] opinion [did] not describe a person in a psychotic state. During [his] interview with [the Veteran] he denied symptomatology consistent with a psychotic state. [The Veteran instead] described having experienced a 'breakdown [or] major anxiety attack.'" This examiner opined that the Veteran's current acquired psychiatric disability was related to his condition in 1979 and 1980. The rationale was, "apparently, [the Veteran] had difficulty adjusting to civilian life having been anxious and depressed."

Thereafter, on VA mental disorders examination in January 2011, "the Veteran noted no substantial emotional symptoms." He stated as follows: "Everything is where it's supposed to be right now, I'm in the best shape I've been in for a long time, I'm as good as I've been in a lot of years." The VA examiner reviewed the Veteran's claims file, including his service treatment records and post-service VA treatment records. The Veteran's past psychiatric hospitalizations, multiple diagnoses, and outpatient treatment were noted. He reported having nightmares once or twice a year. He related his improvement to medication. He socialized infrequently. His income came from his late wife's life insurance proceeds. He also reported "minimal to no" psychiatric symptoms. The Veteran had not been employed for 15 years due to "issues being supervised." He stated that most of his stress evaporated when his wife died. Mental status examination of the Veteran included a slightly illogical focus on somatic symptoms "and his experiences in the Navy." The VA examiner concluded that there was no diagnosis on Axis I and that "the Veteran's social and psychiatric difficulties [were] primarily secondary to an Axis II diagnosis rather than an Axis I diagnosis." The Axis II diagnosis was personality disorder, not otherwise specified.

The Board acknowledges here that, in June 2007, the VA examiner provided an opinion linking the Veteran's acquired psychiatric disability other than PTSD (which was diagnosed as adjustment disorder with mixed anxious and depressed mood) to the "acute psychotic state" reported by Dr. R.E.H. in his 1983 letter that the Veteran apparently experienced in April 1979 within the first post-service year. 
The underlying rationale, however, provided by the VA examiner suggests that the symptomatology noted in April 1979 was brought on by events that occurred in the Veteran's service when considered in connection with the Veteran's lay statements. The Veteran has specifically alleged that he experienced stressful events in service. Dr. R.E.H. specifically reported that during the April 1979 evaluation, the Veteran indicated that he believed his illness reflected stressful experiences as a radioman on a submarine while serving in the United States Navy. The Board finds the Veteran's statement very probative because of its close proximity to service. The 2007 VA examiner indicated that he believed that the symptomatology documented in 1979 was attributable to the Veteran having difficulty adjusting to civilian life having been anxious and depressed. If the Veteran is believed to have been having difficulty adjusting to civilian life then this clearly relates back to his military service to include the alleged stressful events. The 2007 VA examiner provided a diagnosis of continued adjustment disorder with mixed anxious and depressed mood. The medical evidence of record is significant for showing the Veteran suffering from continuous mental illness for decades after his discharge from service. For these reasons, the Board resolves reasonable doubt in favor of the Veteran and finds that an acquired psychiatric disorder other than PTSD to include adjustment disorder with mixed anxious and depressed mood is etiologically related to the Veteran's military service. In so finding, the Board is cognizant of the subsequent January 2011 VA examination findings; however, the record shows that during the appeal period, an acquired psychiatric disorder other than PTSD attributable to service was diagnosed. Thus, the elements of entitlement to service connection for a current disability causally related to an event in service have been met. See McClain v. Nicholson, 21 Vet. App. 319 (2007) (noting that the "current disability" required for service connection includes a disability at the time of filing or during the pendency of a claim).

The remaining post-service medical evidence, however, does not support granting the Veteran's claim of service connection for fibromyalgia. In an August 2007 letter, J.I., M.D., stated that the Veteran complained of feeling exhausted, tired, and pain in the back and thoracic area, and that "[t]here [was] a possibility of fibromyalgia." Physical examination showed full extraocular movements, a symmetrical face, hypersensitivity and spinal tenderness in the lower back, no hemiparesis or monoparesis, and good ambulation. The Veteran was advised to try taking 50 mg of Lyrica at night.

On VA outpatient treatment in September 2007, the Veteran asked his VA treating clinician for a prescription for 50 mg of Lyrica per day and presented her with the letter from Dr. J.I. The VA treating clinician stated that the Veteran's electroencephalogram (EEG) showed no seizure activity. This clinician also stated that the Veteran's mild hand tremors were thought to be due to his use of Depakote to treat his headaches. The assessment included back pain with a question of whether it was fibromyalgia versus neuralgia. The Veteran was informed that Lyrica was non-formulary and he did not have any indications for its approval by VA.

In a December 2007 letter, Dr. J.I. stated that the Veteran's "tremors are better with Lyrica. Lyrica also helped his back pain and fibromyalgia pain." Physical examination showed normal strength, coordination, and gait/station. The Veteran was advised to increase his Lyrica to 50 mg twice a day.

In a May 2008 letter, Dr. J.I. stated that the Veteran's complaints included "aches and pains." The Veteran reported that Lyrica and Depakote "are helping him." Physical examination showed normal strength, coordination, and gait/station. The Veteran was advised to continue taking his medication.

On VA fibromyalgia examination in February 2011, the Veteran complained of fibromyalgia since 2007 which manifested as "extreme back pain and tiredness." It was noted that the Veteran's tiredness and pain resolved after he started taking Lyrica 50 mg twice daily. "Currently he is feeling good with this medication." The VA examiner reviewed the Veteran's claims file, including his service treatment records and post-service VA treatment records. The Veteran reported that his current fibromyalgia symptoms were unexplained fatigue, sleep disturbance, headache, depression, anxiety, and musculoskeletal symptoms. Physical examination showed no tender points, tender ankles on palpation, and no signs of arthritis of other joints. The VA examiner stated, "At today's examination, I cannot make a diagnosis of fibromyalgia." The diagnosis was fibromyalgia by history which was not active. 

In a May 2011 addendum opinion to the February 2011 VA fibromyalgia examination, the VA clinician who conducted this examination stated that "it's obvious [the Veteran] does not have fibromyalgia." The rationale for this opinion was that no trigger points for fibromyalgia were elicited on the February 2011 VA examination except for "bilateral tender ankles." The rationale also was:

He needs 11 out of 18 classic trigger points to fulfill the criteria for the diagnosis of fibromyalgia. He only had 2 trigger points [on examination] which are not one of the classic tender points referred to in the diagnosis of fibromyalgia. The mere fact [that] he got relief from Lyrica does not mean the diagnosis was right.

Thus, the VA clinician concluded that "the Veteran has no fibromyalgia."

A service connection claim must be accompanied by evidence which establishes that the claimant currently has a disability. Rabideau v. Derwinski, 2 Vet. App. 141, 144 (1992); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Service connection is not warranted in the absence of proof of current disability. The Board has considered whether the Veteran experienced fibromyalgia at any time during the pendency of this appeal. Service connection may be granted if there is a disability at some point during the claim even if it later resolves or becomes asymptomatic. McClain v. Nicholson, 21 Vet. App. 319 (2007). In this case, the evidence does not indicate that the Veteran has been diagnosed as having fibromyalgia which could be attributed to active service. As the VA examiner stated in May 2011, the Veteran's symptomatology which he attributed to fibromyalgia does not, in fact, support a diagnosis of this disability. The Board finds the May 2011 VA examiner's opinion more probative than the medical evidence that merely suggested the possibility that the Veteran had fibromyalagia. 
While the Veteran was prescribed medication, Dr. J.I.'s August 2007 letter and the September 2007 VA treatment record clearly show that fibromyalgia was not definitively diagnosed. Crucially, the May 2011 findings clearly document that the VA examiner conducted the proper protocol for diagnosing fibromyalgia (e.g., "He needs 11 out of 18 classic trigger points to fulfill the criteria for the diagnosis of fibromyalgia. He only had 2 trigger points . . . ."). Thus, the Board finds the May 2011 VA examiner's opinion the most probative evidence in regard to the question of whether the Veteran has fibromyalgia. While the Veteran is competent to report on symptoms, he is not competent to diagnose fibromyalgia, which is a complex disease requiring medical expertise to identify. Consequently, the May 2011 VA unfavorable opinion is dispositive of the question of the existence of a current disability. 

Indeed, in this decision, the Board has considered all lay and medical evidence as it pertains to the issue. 38 U.S.C.A. § 7104(a) ("decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record"); 38 U.S.C.A. § 5107(b) (VA "shall consider all information and lay and medical evidence of record in a case"); 38 C.F.R. § 3.303(a) (service connection claims "must be considered on the basis of the places, types and circumstances of his service as shown by service records, the official history of each organization in which he served, his medical records and all pertinent medical and lay evidence"). In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). 

Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown,6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). A Veteran is competent to report symptoms that he experiences at any time because this requires only personal knowledge as it comes to him through his senses. Layno, 6 Vet. App. at 470; Barr, 21 Vet. App. at 309 (holding that, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation). 

As noted, the absence of contemporaneous medical evidence is a factor in determining credibility of lay evidence, but lay evidence does not lack credibility merely because it is unaccompanied by contemporaneous medical evidence. See Buchanan, 451 F.3d at 1337; Barr, 21 Vet. App. at 303. In determining whether statements submitted by a Veteran are credible, the Board may consider internal consistency, facial plausibility, consistency with other evidence, and statements made during treatment. Caluza v. Brown, 7 Vet. App. 498 (1995). 

As part of the current VA disability compensation claim, in recent statements, the Veteran has asserted that his symptoms of fibromyalgia have been continuous since service. He asserts that he continued to experience symptoms relating to fibromyalgia (tiredness and pain) after he was discharged from the service. In this case, after a review of all the lay and medical evidence, the Board finds that the weight of the evidence demonstrates that the Veteran did not experience continuous symptoms of fibromyalgia after service separation. Further, the Board concludes that his assertion of continued symptomatology since active service, while competent, is not credible. 

The Board finds that the Veteran's more recently-reported history of continued symptoms of fibromyalgia is inconsistent with the other lay and medical evidence of record. Indeed, while he now asserts that his disorder began in service, in the more contemporaneous medical history he gave at the service separation examination, he denied any relevant history or complaints of symptoms. Specifically, the service separation examination report reflects that the Veteran was examined and he was found to be normal clinically. His in-service history of symptoms at the time of service separation is more contemporaneous to service so it is of more probative value than the more recent assertions made many years after service separation. See Harvey v. Brown, 6 Vet. App. 390, 394 (1994) (upholding Board decision assigning more probative value to a contemporaneous medical record report of cause of a fall than subsequent lay statements asserting different etiology); Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (upholding Board decision giving higher probative value to a contemporaneous letter the Veteran wrote during treatment than to his subsequent assertion years later). 

The Board notes that the Veteran sought treatment for a myriad of medical complaints since discharge from service, including bilateral hearing loss. Significantly, during that treatment, when he specifically complained of other problems, he never reported complaints related to fibromyalgia. Rucker, 10 Vet. App. at 67 (holding that lay statements found in medical records when medical treatment was being rendered may be afforded greater probative value; statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper care).

When the Veteran was examined for VA adjudication purposes in February 2011 for fibromyalgia, he did not report the onset of fibromyalgia symptomatology during or soon after service or even indicate that the symptoms were of longstanding duration. Instead, he reported a history of fibromyalgia symptoms beginning in 2007, nearly 30 years after his service separation in 1978. The Veteran filed a VA disability compensation claim for service connection for low back pain in October 1978, approximately 1 month after his service separation, but did not claim service connection for fibromyalgia or make any mention of any relevant symptomatology. He did not claim that symptoms of his disorders began in (or soon after) service until he filed his current VA disability compensation claims. During the recent VA compensation claim, the Veteran reported the onset of symptoms to different times. Specifically, on the service connection claim he asserted that his fibromyalgia began during active service. As noted elsewhere, he subsequently reported on VA fibromyalgia examination in February 2011 that his fibromyalgia began in 2007. These inconsistencies in the record weigh against the Veteran's credibility as to the assertion of continuity of symptoms since service and so no credible continuity of symptoms is found. See Madden, 125 F.3d at 1481 (finding Board entitled to discount the credibility of evidence in light of its own inherent characteristics and its relationship to other items of evidence); Caluza v. Brown, 7 Vet. App. 498, 512 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (upholding Board's finding that a Veteran was not credible because lay evidence about a wound in service was internally inconsistent with other lay statements that he had not received any wounds in service).

In reaching this conclusion, the Board has considered the doctrine of the favorable resolution of doubt in favor of the Veteran. However, for the reasons explained, the Board finds that the preponderance of the evidence is against the claim for service connection for fibromyalgia. Consequently, the doctrine of reasonable doubt is not applicable in the instant appeal. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Entitlement to service connection for an acquired psychiatric disability other than PTSD, to include adjustment disorder with mixed anxious and depressed mood, is granted. 

Entitlement to service connection for fibromyalgia is denied.


REMAND

The Veteran also contends that he incurred a gastrointestinal disability (which he characterized as GERD) and erectile dysfunction during active service or secondary to an acquired psychiatric disability. He further contends that his service-connected bilateral hearing loss is more disabling than currently evaluated. 

With respect to the Veteran's service connection claims for a gastrointestinal disability and for erectile dysfunction, the Board acknowledges that he was examined for VA adjudication purposes in February 2011. In light of the Board's award of service connection for an acquired psychiatric disability, the Board finds that the Veteran should undergo another VA examination and an opinion should be obtained that addresses a secondary service connection theory of entitlement. 

With respect to the Veteran's increased rating claim for bilateral hearing loss, a review of the record evidence shows that he was examined most recently for this disability by VA in January 2011. The Board again notes that VA's duty to assist under the VCAA includes obtaining an examination or medical opinion when necessary. The Court has held that when a Veteran alleges that his service-connected disability has worsened since he was examined previously, a new examination may be required to evaluate the current degree of impairment. See Snuffer v. Gober, 10 Vet. App. 400, 403 (1997). Given the Veteran's contentions, and given the length of time which has elapsed since his most recent VA examination in January 2011, the Board finds that, on remand, he should be scheduled for an updated VA examination to determine the current nature and severity of his service-connected bilateral hearing loss. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for an appropriate VA examination to determine the nature and etiology of his gastrointestinal disability. The claims file and a copy of this remand must be provided to the examiner for review. All appropriate testing should be conducted. The Veteran should be asked to provide a complete medical history, if possible. The examiner should identify any gastrointestinal disability, to include GERD, currently experienced by the Veteran, if possible.

Based on a review of the claims file and the results of the Veteran's physical examination, and the Veteran's statements regarding the development and treatment of his claimed disorder, the examiner is asked to state whether it is at least as likely as not (i.e., a 50 percent or greater probability) that a gastrointestinal disability, to include GERD, is caused by OR aggravated by the Veteran's service-connected acquired psychiatric disability other than PTSD, to include adjustment disorder with mixed anxious and depressed mood. If aggravation is found, then the examiner should quantify the degree of such aggravation, if possible. A complete rationale must be provided for any opinions expressed.

2. Schedule the Veteran for an appropriate VA examination to determine the nature and etiology of his erectile dysfunction. The claims file and a copy of this remand must be provided to the examiner for review. All appropriate testing should be conducted. The Veteran should be asked to provide a complete medical history, if possible.

Based on a review of the claims file and the results of the Veteran's physical examination, and the Veteran's statements regarding the development and treatment of his claimed disorder, the examiner is asked to state whether it is at least as likely as not (i.e., a 50 percent or greater probability) that erectile dysfunction is caused by OR aggravated by the Veteran's service-connected acquired psychiatric disability other than PTSD, to include adjustment disorder with mixed anxious and depressed mood. A complete rationale must be provided for any opinions expressed.

3. Schedule the Veteran for an appropriate VA examination to determine the current nature and severity of his service-connected bilateral hearing loss. The claims file and a copy of this remand must be provided to the examiner for review. All appropriate testing should be conducted. The Veteran should be asked to provide a complete medical history, if possible. A complete rationale must be provided for any opinions expressed.

4. The Veteran should be given adequate notice of the requested examinations which includes advising him of the consequences of his failure to report to the examinations. If he fails to report to the examinations, then this fact should be noted in the claims file and a copy of the scheduling of examination notification or refusal to report notice, whichever is applicable, should be obtained by the RO and associated with the claims file.

5. Review all evidence received since the last prior adjudication and readjudicate the Veteran's claims. If the determination remains unfavorable to the Veteran, then the RO should issue a supplemental statement of the case that contains notice of all relevant actions taken. An appropriate period of time should be allowed for response by the Veteran and his attorney. Thereafter, the case should be returned to the Board for further appellate consideration, if in order.


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs